**Commonwealth v. Johnson**

*Eric M. Noonan,* assistant district attorney, for the Commonwealth.

*Hubert X. Gilroy,* for defendant.

BAYLEY, *J.,* June 19, 1985—On February 27, 1985, defendant was convicted by a jury on a count of indecent assault on his daughter, Amanda Johnson, born April 30, 1979. Prior to trial, defendant filed a motion to quash the information upon a claim that the averment in the criminal information, as to the time the alleged act took place, was insufficient to sustain a conviction. The time period averred in

the information was within the applicable statute of limitations.[1]

By order dated February 8, 1985, supported by an opinion, we dismissed the motion to quash, noting that the facts necessary to determine defendant's constitutional claims could only be properly analyzed after trial.

Those facts, as developed at trial, are as follows: (1) After being qualified for competency, Amanda testified that on a single occasion when she was in the bedroom of her parents' home, and her mother was out, her father touched her between her legs on her skin, under her pajamas. She testified that he touched her at a location on her body where she goes to the bathroom. This occurred after her father had read her a book described as the "handicap book". When this act occurred, her father told her, "Don't tell anyone or I'll beat you up." (2) Criminal complaints against Mr. Johnson were filed on October 5, 1984. The preliminary hearing was held on November 27, 1984, and the trial was held on February 26 and 27, 1985. (3) The initial criminal complaint filed before a district justice on October 5, 1984 alleged that the criminal conduct occurred on or about the spring or summer of 1983. The complaint was amended at the preliminary hearing to change the dates to on or about December of 1983, January of 1984, or February of 1984. When the district attorney filed an information, the time period was changed to the fall of 1982 through February of 1984. This information was amended to finally aver that the criminal conduct occurred in the time period from February 1983 through February 1984. (4)

---

1. The statute of limitations for indecent assault, a misdemeanor of the second degree, 18 Pa. C.S. §3126, is two years, 42 Pa. C.S. §5552(a).

Mr. and Mrs. Johnson separated when Mr. Johnson left the marital residence on February 26, 1984. Amanda first told her mother and her babysitter, Cynthia Lehman, about the alleged incident in early March, 1984. (5) Mrs. Johnson testified that the "handicap book" that Amanda stated her father was reading her on the evening of this alleged crime, was ordered on February 17, 1983. That type of a book usually took a week or ten days to be delivered. (6) Mrs. Johnson testified that her marriage started to deteriorate in February of 1983 and continued to deteriorate until the separation on February 26, 1984. She stated that she was home almost every night between February, 1983 and February, 1984 although her work records indicated she had worked on the evenings of March 7, 1983, March 22, 1983, and April 9, 1983. (7) Mr. Johnson was the sole witness for the defense. He maintained his innocence and outlined a less than amicable history of trying to bring his marital difficulties to a final resolution.

Defendant has filed various post-trial motions which include a claim that the failure of the Commonwealth to prove the date of the commission of the offense other than during the time period between February, 1983, through February, 1984, has denied him his rights of due process guaranteed through the Fourteenth Amendment of the United States Constitution and Article I, section 9, of the Pennsylvania Constitution.

## DISCUSSION

In Commonwealth v. Devlin, 460 Pa. 508, 333 A.2d 888 (1965), defendant was found guilty of sexually abusing a 22 year old retarded man who had the mental ability of a first or second grade child and the emotional stability of an even younger child.

The only proof at trial was that the crime occurred sometime during a 14 month period. Citing Commonwealth v. Levy, 146 Pa. Super. 564, 23 A.2d 97 (1941), the court reversed the conviction noting:

"We do not understand the rule of the cases to be that the Commonwealth need not prove any date at all, but can sustain a conviction merely by proving that the offense must have been committed upon some unshown date within the statutory period. Our attention has not been called to any case so holding." 146 Pa. Super. at 569-70, 23 A.2d at 99.

Accord Commonwealth v. Morrisoni, 180 Pa. Super. 121, 118 A.2d 258 (1955); Commonwealth v. Mourar, 167 Pa. Super. 279, 74 A.2d 734 (1950).

Certainly, the Commonwealth has shown that the crime was committed, if at all, within the statutory period of limitations. As a general proposition of law, the evidence is sufficient to support a conviction if it tends to prove that the offense was committed prior to the commencement of the prosecution and that it was not committed at a time so remote that its prosecution is barred by the prescribed statutory period of limitations. Commonwealth v. Weiss, 284 Pa. 105, 130 A. 403 (1925); Commonwealth v. Ryhal, 274 Pa. 401, 118 A. 358 (1922); Commonwealth v. Kuhn, 200 Pa. Super. 649, 190 A.2d 337 (1963); 23 C.J.S. Criminal Law §915 (1961). If the statute of limitations was our only consideration, this conviction could be upheld. However, the rule announced in Levy contains another requirement: the date of the commission of the offense must be *fixed with reasonable certainty*.' We do not feel that the Commonwealth's proof to the effect that the crime was committed on any single day within a fourteen-month period, meets the 'sufficient particularity' standard of Levy. To hold otherwise would violate

the notions of fundamental fairness embedded in our legal process.

Our holding is required by the Fourteenth Amendment Due Process Clause of the United States Constitution and by Article I, Section 9, of the Pennsylvania Constitution, P.S. Our Commonwealth's Constitution there states:

"In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him . . . nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land."

It has been a long-standing tenet of Pennsyvania jurisprudence that 'the law of the land' in Article I, Section 9 is synonymous with 'due process of law.' See, e.g. Commonwealth v. Jackson, 457 Pa. 79, 319 A.2d 161 (1974); Craig v. Kline, 65 Pa. 399, 413 (1870). Thus, we have held that the State Constitution is violated where the defendant is substantially denied an opportunity to present a defense. Commonwealth v. Jester, 256 Pa. 441, 110 A. 993 (1917).

Since the Devlin opinion is grounded on constitutional principles, we may not rely on a rule of criminal procedure as providing definitive authority that a defendant may be convicted merely because the information charges that the crime took place during the period of the applicable statute of limitations.[2]

---

2. Pa.R.Crim.P. 225, states in pertinent part:

"(b) the information shall be signed by the attorney for the Commonwealth and shall be valid and sufficient in law if it contains: (3) the date when the offense is alleged to have been committed if the precise date is known and the day of the week if it is an essential element of the offense charged, pro-

There are a series of cases that have allowed convictions to stand where offenses cannot be precisely delineated over long periods of time. However, in all of these cases the facts indicated that there were many criminal episodes continuing over a long period of time. See Commonwealth v. Yon, 235 Pa. Super. 232 (1975); Commonwealth v. Niemetz, 282 Pa. Super. 431 (1980); and Commonwealth v. Robinson, 316 Pa. Super. 152, 462 A.2d 840 (1983). As the court noted in Commonwealth v. Niemetz, supra, which involved the repeated sexual abuse of a child from the time she was a nine year old, third grade student, through the time she was through the ninth grade:

Moreover, we do not believe that it would serve the ends of justice to permit a person to rape and otherwise sexually abuse his child with impunity simply because the child has failed to record in a daily diary the unfortunate details of her childhood.

Devlin, of course, does not hold that the Commonwealth must always prove the actual date of the crime. The fact that the victim cannot set the date for the crime is not necessarily fatal to the Commonwealth's case. In those cases where there are a multiplicity of incidents occurring over a long period of time, the balance tips in favor of the Commonwealth in being able to support its prosecution even though precise times and dates cannot be recalled by the young victim. However, in Devlin, the court held:

"Any leeway permissible would vary with the nature of the crime and the age and conditions of the

---

vided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient."

victim balanced against the rights of the accused. Here, the fourteen-months span of time is such an egregious encroachment upon the appellant's ability to defend himself that we must reverse." (Footnote omitted)

The Devlin court noted some of the factors to be taken into consideration when an offense may be proven within a reasonable time even though a precise date and time is not alleged. One of those factors is whether or not the failure to plead a precise date limits the ability of defendant to present an alibi defense. However, this is only a factor and must be considered with all other aspects of the case. See Commonwealth v. Speicher, 393 A.2d 904 (1978).

In Devlin, the credibility of the victim was a serious issue. The court concluded that the failure to place the date of the incident precluded the defendant from being able to attack the credibility of the victim by showing (1) behavior of the victim after the incident which was inconsistent with the extremely severe conduct to which the victim was allegedly subjected, and (2) the physical and emotional trauma which would have necessarily resulted therefrom.

In refusing to dismiss the information at the pretrial stage as being premature, we noted in our opinion of February 15, 1985, that defendant may have had sufficient contact with his daughter so as to be able to offer testimony as to the above factors, if they were relevant, or that he would possibly have other evidence available for his defense. Furthermore, the Commonwealth maintained at the pretrial stage that it proposed to introduce a statement made by the defendant which we concluded might otherwise render moot any prejudice that would result from his inability to present an alibi defense.

The Commonwealth, as it turned out, introduced no statement made by defendant. Evidence was admitted as to observed behavioral changes in Amanda, as follows: (1) In the fall of 1982, Amanda appeared to her babysitter to have developed some fear of her father. She would cry before she was ready to go home and appeared afraid to go home. (2) At the end of the winter or beginning of the spring of 1983, Amanda began to cry during lunch at her babysitter's. She would become trancelike and withdraw, clutching her genitals. (3) In early March of 1983 Amanda became very clinging to her babysitter, asking repeatedly whether she loved her.

It is readily apparent that the changes in Amanda's behavior in the fall of 1982 had to have occurred prior to the alleged criminal conduct of defendant. Her behavior at the end of winter and the beginning of spring of 1983, and early March of 1983, occurred during a period of a strained relationship between her parents, and may or may not have occurred prior to the alleged criminal conduct of the defendant. Obviously, if the date of the alleged incident could be limited to the three evenings the mother said she worked in 1983, i.e., March 7, March 22, or April 9, the Commonwealth would have averred these dates in the information. To conclude, however, that the alleged criminal conduct occurred on one of those dates would be purely speculative. And of course, if it did, the testimony of behavioral changes in early March of 1983 would have occurred prior to March 22, 1983, and April 9, 1983.

Defendant testified in his own defense and denied any illegal contact with Amanda. All of the testimony generally indicated that the strained relationship between the mother and father after separation resulted in considerable difficulty on the

part of the father in maintaining contact with Amanda, which he wanted to do. Additionally, Amanda told both Cynthia Lehman and her mother, prior to Father's Day of 1984, that she had lied about the alleged incident involving her father. She later stated, however, that she had lied when she made this statement because she thought that if everybody thought it hadn't happened, she would get to see her father on Father's Day.

Analyzing all of the evidence presented at trial, we find Commonwealth v. Devlin, supra, to be on point and to require the discharge of defendant. No reasonable date or time frame in which the alleged offense took place can be determined. The testimony as to changed behavior by Amanda, which would otherwise support and help corroborate the Commonwealth's case, cannot be related to the date of the offense. Furthermore, some of those behavioral changes had to occur before the alleged offense occurred. The proposed statement made by the father, which may have been a factor to consider along with all other aspects of the case had it been admitted at trial, never was introduced.[3] There is no evidence upon which the jury could have determined whether any of the observed behavioral changes in Amanda were related to the traumatic effect of the strained relationship between her parents or to the alleged criminal act which could have occurred, according to the Commonwealth's testimony and the criminal information, as early as February, 1983. In that month Amanda was three years nine months old. She didn't tell anybody about the alleged incident until March of 1984, a year and a month after the incident could have happened. At

---

3. The Commonwealth's offer at trial, which was then withdrawn, was to admit an alleged tacit admission.

that point she would have been four years ten months old. By the time she testified at the trial in February of 1985, when she was five years nine months old, she was recalling a single, brief incident which possibly occurred as long as two years earlier, or, at the least, one year earlier. The time periods involved were not within reasonable certainty.

Any alleged abuse of a child, much less sexual abuse, is one of the most serious matters that can come before a court. Within the constraints of the Constitution there must be laws and procedures to effectively deal with such offenders. However, every defendant must be provided with due process of law under both the United States Constitution and the Pennsylvania Constitution. The government prosecutes cases within the confines of the available facts. On the facts of this case, defendant has been denied due process of law. Commonwealth v. Devlin, supra; Commonwealth v. Levy, supra.[4]

## ORDER OF COURT

And now, this June 19, 1985, for the reasons set forth in the foregoing opinion, defendant is, discharged.

---

4. This conclusion makes it unnecessary for us to address the other issues raised in defendant's post-trial motions.