556 A.2d 18

## Carlos R. Leffler, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued September 13, 1988, before President Judge CRUMLISH, JR., Judge SMITH, and Senior Judge NARICK, sitting as a panel of three.

*Gerard P. Fox,* with him, *R. Timothy Columbus* and *Marcy M. Rehberger, Collier, Shannon, Rill & Scott,* and *Sherill T. Moyer, Rhoads & Sinon,* for petitioner.

*Michael A. Roman,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE SMITH, March 20, 1989:

Carlos R. Leffler, Inc. (Taxpayer) appeals from the September 27, 1985 order of the Board of Finance and Revenue (Board) denying Taxpayer's petition for refund of taxes paid on revenues derived from the sale of No. 2 diesel fuel oil (diesel fuel). Questions presented on appeal are whether the Oil Company Franchise Tax Act (Franchise Tax)[1] applies to consideration derived from sales of diesel fuel within the state; and whether the regulations promulgated by the Department of Revenue (Department) pursuant to the Franchise Tax are invalid. The Board is affirmed.

Taxpayer is a corporation headquartered in Richland, Pennsylvania and is engaged in the sale and importation of petroleum products into the Commonwealth of Pennsylvania. Stipulation of Facts, No. 1. Taxpayer does not operate any refining facilities and is not involved in the manufacturing or processing of petroleum products;

---

[1] Act of June 23, 1981, P.L. 98, *as amended,* 75 Pa. C. S. §§9501-9511.1.

rather, Taxpayer merely resells petroleum products which it purchases within the state or outside the state and imports into the state or from its affiliates within the state. Diesel fuel in question is a liquid petroleum product which may be used as a motor fuel, residential heating fuel, or as fuel for generation of electricity by a public utility. Stipulation of Facts, Nos. 8, 10-11.

On July 12, 1985, Taxpayer filed with the Board a petition for refund of taxes paid in the amount of $1,035,278.38 pursuant to the Franchise Tax during the period of January 1, 1985 through May 31, 1985. Stipulation of Facts, Nos. 3-4. On September 27, 1985, the Board denied the refund and issued the order in question whereupon petition for review to this Court followed.

Taxpayer initially argues that revenues from the sale of diesel fuel do not constitute petroleum revenues within the meaning of the Franchise Tax. Taxpayer's challenge to the imposition of the tax is premised on the fact that the tax levied by the Franchise Tax is only against those petroleum products which are "liquid fuels" within the meaning of the Liquid Fuels Tax Act.[2] Taxpayer asserts that since diesel fuel is specifically excluded from the Liquid Fuels Tax Act definition of liquid fuels, it is therefore not subject to the tax imposed by the Franchise Tax. Taxpayer further claims that applicable rules of statutory construction do not support the position advocated by the Board.

In support of its contention that the Board has ignored rules of statutory construction, Taxpayer claims that words of a statute may not be disregarded under the pretext of pursuing the spirit of the statute and that in construing its meaning the legislature never intended an unreasonable result; the term, "liquid fuels taxes" has an

---

[2] Act of May 21, 1931, P.L. 149, *as amended,* 72 P.S. §§2611a-2611q.

established technical meaning which warrants strict adherence; words and phrases may not be construed as surplusage; tax statutes must be strictly and narrowly construed and ambiguities must be resolved in favor of Taxpayer; and different interpretations cannot be rationally applied to identical language.

This precise issue was recently addressed in *Commonwealth v. Klinger*, 369 Pa. Superior Ct. 526, 535 A.2d 1060 (1988), *appeal denied*, 520 Pa. 582, 549 A.2d 915 (1988), *appeal denied*, Pa. , A.2d (1988). In *Klinger*, where the taxpayer advanced essentially the same arguments as those advanced by Taxpayer with respect to interpretation of the applicable tax statutes, the Superior Court concluded that diesel fuel was subject to taxation under the Franchise Tax. Review of arguments presented by Taxpayer in the matter *sub judice* leads this Court to the same conclusion as that reached by the Superior Court in *Klinger*.

Section 9502(a) of the Franchise Act provides:

Every oil company . . . doing business in this Commonwealth, shall pay an 'oil company franchise tax for highway maintenance and construction' which shall be an excise tax of 60 mills upon each dollar of its petroleum revenues ... .

"Petroleum revenues" are defined in Section 9501 of the Franchise Tax, 75 Pa. C. S. §9501 as all considerations derived from the first sale of petroleum products otherwise subject to liquid fuel taxes. The same section also includes diesel fuel in its definition of petroleum products.[3]

The objective of statutory construction is to ascertain and effectuate the intent of the legislature. Section

---

[3] Amendments were made to the definition of "petroleum revenue" by Act of December 12, 1986, P.L. 1562; however, those amendments are not relevant to the issue at hand.

1921(a) of the Statutory Construction Act of 1972 (Act), 1 Pa. C. S. §1921(a). Taxpayer argues, however, that the diesel fuel could never generate petroleum revenue for the purposes of the Franchise Tax because diesel fuel is not subject to the Liquid Fuels Tax, and therefore inclusion of diesel fuel in the definition of petroleum products would be surplusage, a result prohibited by 1 Pa. C. S. §1921(a). Petroleum products are specifically defined as including diesel fuel to propel motor vehicles on the public highways. Although it is true as Taxpayer suggests that technical terms warrant strict adherence and tax statutes are to be narrowly construed, it is also well established in this jurisdiction that the legislature intended for the entire statute to have effect and to interpret the applicable statutes as Taxpayer suggests would be contrary to the legislative intent to include diesel fuel in its definition of petroleum products. *See Fireman's Fund Insurance Co. v. Nationwide Mutual Insurance Co.*, 317 Pa. Superior Ct. 497, 464 A.2d 431 (1983). Moreover, individual statutory provisions must be construed with reference to the entire statute of which they are a part. *Houtz v. Department of Public Welfare*, 42 Pa. Commonwealth Ct. 406, 401 A.2d 388 (1979). In *Klinger,* the Superior Court held that:

> ' Applying these principles to resolve appellant's first issue, we conclude that the General Assembly intended the oil company franchise tax to apply to the sale of diesel fuel. The Legislature imposed the tax upon an oil company's petroleum revenues, which it defined as all consideration derived from the first sale of petroleum products otherwise subject to liquid fuels taxes. Importantly, the Legislature specifically defined petroleum products as including diesel fuel used to propel motor vehicles on the public highways. 75

Pa. C. S. §9501, 6th definition. If we were to adopt appellant's construction that the tax does not apply to sales of diesel fuel, we would virtually eliminate the Legislature's express inclusion of certain diesel fuel within the definition of petroleum products.

*Id.*, 369 Pa. Superior Ct. at 532-33, 535 A.2d at 1061.

Nor is there any merit to Taxpayer's argument that the phrase "otherwise subject to liquid fuels taxes" contained in the definition of petroleum revenue is a specific reference to the Liquid Fuels Tax. Pennsylvania imposes two taxes on motor fuel consumption, the Liquid Fuels Tax and the Fuel Use Tax.[4] The Liquid Fuels Tax is imposed upon all products which are suitable for use in internal combustion engines except diesel fuel. The Fuel Use Tax imposes tax upon all combustible gases and liquids used in the generation of power to propel vehicles of any kind on the public highways. These two taxes operate to tax all fuels of whatever nature or kind consumed in motor transportation on public roads. Thus, the choice of the language in the Fuel Use Tax and the definition of petroleum products in the Franchise Tax supports the conclusion that the legislature intended to include diesel fuel as taxable under the Franchise Tax. The plain language of the Franchise Tax statute is clear and unambiguous and indicates that it was meant to apply to diesel fuel. If the legislature had intended a different result, then it would have so indicated. In this regard, the Superior Court stated in *Klinger* that:

The specification of petroleum products 'otherwise subject to liquid fuels taxes' within the definition of petroleum revenue does not change our holding. As explained above, appellant con-

---

[4] Act of January 14, 1952, P.L. 1965, *as amended*, §§2614.1-2614.16.

tends that the quoted phrase refers only to the tax imposed by the Liquid Fuels Tax Act, 72 P.S. §2611(a) *et seq*., which applies primarily to gasoline and which does not apply to diesel fuel. We do not agree, however, that the phrase 'liquid fuels taxes' is a specific reference to the tax imposed by the Liquid Fuels Tax Act. If the General Assembly had intended to limit the definition of petroleum revenue to petroleum products subject to taxes imposed by the Liquid Fuels Tax Act, it could have employed a specific reference to that Act.

*Id.,* 369 Pa. Superior Ct. at 533, 535 A.2d at 1061. Nor does it result in inconsistent use of the phrase "liquid fuels taxes" as Taxpayer asserts in its brief. Consequently, there is no merit to Taxpayer's argument that Franchise Tax Act must fail since it violates the due process clause of both the Federal and State Constitutions because of vagueness.

Taxpayer next argues that to apply the tax as the Board suggests would violate the express requirement of the Franchise Tax that the tax only be imposed on the first sale of the petroleum product. The basis for Taxpayer's contention is that it is impossible for the Taxpayer to determine at the time of the first sale the purpose for which the diesel fuel will be used. Taxpayer points out that the diesel fuel may be used either for motor vehicles or for home heating purposes, an outcome that goes against the requirement in the Franchise Tax that products used for residential heating are exempt and therefore results in a "catch-22" situation. *See* Taxpayer's Brief, p. 20. However, Taxpayer ignores the fact that later provisions of the tax, namely Section 9502(e) of the Franchise Tax, 75 Pa. C. S. §9502(e), provide a credit for taxes paid on taxable petroleum products when it is shown that the

presumed taxable product was put to an exempt use. Pursuant to this system, the Taxpayer has to pay taxes in advance, but may subsequently obtain a refund.

Taxpayer next objects to the regulations promulgated by the Department asserting that these regulations exceed the authority delegated to the Department by the legislature. The Department's regulations define first sale as the sale of a petroleum product which occurs immediately after importation or production. 61 Pa. Code §351.1. This provision allows an importer to determine in many cases that fuel which could have been taxed under the presumption that it is taxable is in fact being sold for exempt purposes. Under this system, tax dollars stay in the Taxpayer's pocket instead of being paid to the Commonwealth and later being returned in the form of a credit. Thus, this regulatory provision does not change the impact of any statutory provision but rather simplifies and streamlines the process. As the tax liability is exactly the same under the statutory or regulatory patterns, there is no usurpation of legislative authority by the Department nor can these regulations be viewed as going beyond the authority granted to the Department to enforce and administer the statute pursuant to Section 9506 of the Franchise Tax, 75 Pa. C. S. §9506. The fact that the legislature has not disturbed the regulations since they went into effect lends support to the Department's interpretation. *See Klinger.*[5] The order of the Board is affirmed.

---

[5] The instant case is clearly distinguishable from *Paris Manufacturing Co. v. Commonwealth,* 505 Pa. 15, 476 A.2d 890 (1984), relied upon by Taxpayer, wherein the Supreme Court overruled Department regulations which employed a separate apportionment method than the one set forth in the statute. Moreover, cases cited by Taxpayer with respect to the delegation doctrine are inapposite to the issue at hand.

### ORDER

AND NOW, this 20th day of March, 1989, the order of the Board of Finance and Revenue is affirmed. Unless exceptions are filed within thirty (30) days, the Chief Clerk of the Commonwealth Court of Pennsylvania is ordered and directed to file judgment in favor of the Commonwealth and against the taxpayer in the amount of $1,035,278.38.

Judge MACPHAIL did not participate in the decision in this case.